# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-003-MOC-DCK

| | |
|---|---|
| NICOLE IDA JOSEPH, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) MEMORANDUM AND<br>) RECOMMENDATION |
| MICHAEL MOSES JOSEPH AND<br>ANTHONY ROBERT JOSEPH, | )<br>)<br>) |
| Defendants. | )<br>) |

**THIS MATTER IS BEFORE THE COURT** on Defendants' "Motion to Dismiss Pursuant to Rule 12 for Lack of Jurisdiction and for Improper Venue." (Document No. 8). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

*Pro se* Plaintiff Nicole Ida Joseph ("Plaintiff") initiated this action with the filing of a Complaint (Document No. 1) against Defendants Michael Moses Joseph and Anthony Robert Joseph ("Defendants") on January 2, 2018. The Complaint describes Plaintiff as a resident of North Carolina and Defendants as residents of California. (Document No. 1, p. 1).

Plaintiff and Defendants are the children of the late Mary M. Joseph ("Joseph"), who passed away in California on January 31, 2017. (Document No. 1, p. 2). About a year and a half before her passing, in June 2015, Joseph was diagnosed with lung cancer. (Document No. 1, p.

3). After learning of her mother's diagnosis, Plaintiff began regularly flying back and forth between North Carolina and California to care for her mother. (Document No. 1, p. 3).

As their mother's condition worsened, so did relations between Plaintiff and Defendants. (Document No. 1, pp. 4-10). Plaintiff and Defendants feuded over their mother's medical treatment, as well as over the assets of her estate. (Document No. 1, pp. 4-10). With respect to the assets of Joseph's estate, Plaintiff alleges, among other things, that Defendants breached a fiduciary duty that they owed to Plaintiff in relation to a trust that held Joseph's assets, and that Defendants breached a contract with Plaintiff that concerned real properties belonging to the trust. (Document No. 1, pp. 12-14).

Joseph created the trust at issue in 2005. (Document No. 1, p. 56). The original declaration of trust names Plaintiff and Defendants as beneficiaries. (Document No. 1, p. 46). In addition, the declaration of trust contains a choice-of-law clause providing that it will be governed by California law, and Joseph executed the declaration of trust in Orange County, California. (Document No. 1, pp. 54, 56). The trust holds real property in California and South Carolina but not in North Carolina. (Document No. 1, pp. 58-63).

Based on Defendants' alleged misconduct in California, Plaintiff's Complaint asserts causes of action for: (1) a declaratory judgment; (2) breach of contract; (3) breach of fiduciary duty; (4) conversion; (5) fraud; (6) defamation; and (7) promissory estoppel. (Document No. 1, pp. 11-17).

Defendants filed a "Motion to Dismiss Pursuant to Rule 12 for Lack of Jurisdiction and for Improper Venue" (Document No. 8) and a memorandum in support of their motion (Document No. 9) on February 26, 2018. Defendants' motion seeks dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3). (Document No. 8, p. 1). Defendants argue that

this Court cannot exercise personal jurisdiction over them with respect to Plaintiff's claims, and even if this Court could, the Western District of North Carolina is an improper venue for this action. (Document No. 8, pp. 6-14).

On February 27, 2018, the undersigned issued an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Document No. 10). The order advised Plaintiff that she had a right to respond to Defendants' motion to dismiss on or before March 12, 2018. (Document No. 10, p. 1). The order also advised Plaintiff that failure to respond to the Defendants' motion could result in the dismissal of the Complaint. (Document No. 10, p. 1).

On March 12, 2018, Plaintiff filed a response in opposition to Defendants' motion to dismiss. (Document No. 12). The response argues that this Court can exercise personal jurisdiction over Defendants with respect to Plaintiff's claims. (Document No. 12, pp. 6-8). Further, the response argues that this Court is a proper venue for this action. (Document No. 12, pp. 8-9).

On March 19, 2018, Defendants filed a reply brief. (Document No. 13). Plaintiff followed with two surreplies.[1] (Document Nos. 14, 15). Plaintiff filed her first surreply on March 23, 2018, (Document No. 14) and her second surreply on March 29, 2018 (Document No. 15).

Defendants' motion to dismiss Plaintiff's Complaint is now ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Max O. Cogburn, Jr., is now appropriate.

## II. STANDARDS OF REVIEW

**A.     Personal Jurisdiction**

---

[1] Because Plaintiff neither sought nor received leave of this Court to file these surreplies, they violate Local Rule 7.1(e).

A party invoking federal court jurisdiction has the burden of establishing that personal jurisdiction exists over the defendant. New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005); Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

> When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of evidence. . . . [W]hen, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

Combs, 886 F.2d at 676. (internal citations omitted). "Mere allegations of in personam jurisdiction are sufficient for a party to make a prima facie showing." Barclays Leasing, Inc. v. National Business Systems, Inc., 750 F.Supp. 184, 186 (W.D.N.C. 1990). The plaintiff, however, "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist." IMO Industries, Inc. v. Seim S.R.L., 3:05-CV-420-MU, 2006 WL 3780422 at *1 (W.D.N.C. December 20, 2006). "Rather, in such a case, the plaintiff must come forward with affidavits or other evidence to counter that of the defendant . . . [and] factual conflicts must be resolved in favor of the party asserting jurisdiction...." Id.

Questions of jurisdiction are answered by a two-step analysis: (1) the court must determine whether the North Carolina long-arm statute confers personal jurisdiction; and (2) the court must determine whether the exercise of that statutory power will violate the due process clause of the U.S. Constitution. Gen Latex & Chem. Corp. v. Phoenix Med. Tech., 765 F.Supp. 1246, 1248-49

(W.D.N.C. 1991). The statutory inquiry merges with the constitutional inquiry, essentially becoming one. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997).

There are two varieties of personal jurisdiction, general and specific. General jurisdiction requires "substantial" or "continuous and systematic" contacts or activities in the forum state. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit *arising out of* or *related to* the defendant's contacts with the forum. Helicopterous Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has certain minimum contacts with the forum state. The Fourth Circuit has "synthesized the requirements of the Due Process Clause for asserting specific jurisdiction into a three-part test [considering] . . . '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" New Wellington, 416 F.3d at 294-95 (citing Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004).

**B.     Venue**

When an objection to venue has been raised under Fed. R. Civ. P. 12(b)(3), the burden lies with the plaintiff to establish that venue is proper in the judicial district in which the plaintiff has brought the action. Static Control Components, Inc. v. Intersolution Ventures, Ltd., 2006 WL 2042900 at *10 (M.D.N.C. July 17, 2006) (citing Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F.Supp. 519, 526 (M.D.N.C. 1996)). Where jurisdiction is founded on diversity of citizenship, venue is proper in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving

rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

### III.  DISCUSSION

#### A.  Personal Jurisdiction

In moving to dismiss Plaintiff's Complaint for lack of personal jurisdiction, Defendants argue that the North Carolina long-arm statute does not confer this Court personal jurisdiction over them with respect to Plaintiff's claims. (Document No. 9, pp. 6-7) (citing N.C. Gen. Stat. § 1-75.4). Further, Defendants argue that even if the long-arm statute did confer personal jurisdiction over them, this Court may not exercise general or specific jurisdiction over them consistent with the Due Process Clause of the Fourteenth Amendment. (Document No. 9, pp. 7-14). Because North Carolina's long-arm statute "permits the exercise of personal jurisdiction … to the outer limits allowable under federal due process," thus merging the statutory and constitutional inquiry into one, the undersigned will limit discussion of personal jurisdiction to Defendants' argument that this Court may not exercise general or specific jurisdiction over them consistent with the Due Process Clause of the Fourteenth Amendment. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558-59 (4th Cir. 2014) (citing Dillon v. Numisatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977)). The undersigned will address general and specific jurisdiction in turn.

**1.  General Jurisdiction**

Defendants argue that this Court lacks general jurisdiction over them. (Document No. 9, pp. 7-8). In support of this argument, Defendants contend that the Supreme Court's "continuous and systematic contacts" analysis likely "does not apply to individual defendants domiciled outside

the forum state." (Document No. 9, p. 7) (citing Carnrick v. Riekes Container Corp., No. 15-cv-01899-CMA-KMT, 2016 WL 740998, at *2 (D. Colo. Feb. 24, 2016)); see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (holding that a court may assert general jurisdiction over a foreign corporation when the corporation's affiliations with the forum state are so continuous and systematic as to render the corporation essentially at home in the forum state). Defendants also contend that in any event, they do not have continuous and systematic contacts with North Carolina, because they are both domiciled in California and have no connections to North Carolina. (Document No. 9, p. 8).

In response, Plaintiff argues that this Court may assert general jurisdiction over N.M.T. Inc.—which was owned by Mary M. Joseph and which Plaintiff alleges was fraudulently dissolved—because the corporation had continuous and systematic contacts with North Carolina. (Document No. 12, pp. 3, 6). Plaintiff contends that because N.M.T. Inc. entered into a lease agreement for property in North Carolina and routinely shipped merchandise to an address in North Carolina, N.M.T. Inc. had continuous and systematic contacts with North Carolina. (Document No. 12, p. 6). Thus, in Plaintiff's view, this Court has general jurisdiction over N.M.T. Inc. (Document No. 12, p. 6).

The undersigned finds that this Court may not assert general jurisdiction over Defendants. First, for an individual defendant—as opposed to a corporate defendant—"the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1780 (2017). No party alleges that Defendants are domiciled in North Carolina; indeed, Defendants allege that they are domiciled in California, (Document No. 9, p. 8), and Plaintiff describes Defendants as residents of California, (Document No. 1, p. 1). Second, even if the "continuous and systematic contacts" analysis is applicable to individuals,

Defendants' affiliations with North Carolina are not so extensive as to render them essentially at home in the state. Cf. Goodyear, 564 U.S. at 919 (holding that for a court to exercise general jurisdiction over a corporation that is a citizen of another state or country, the corporation's affiliations with the foreign state must be so continuous and systematic as to render the corporation essentially at home in the state). Thus, the undersigned finds that this Court may not assert general jurisdiction over Defendants.

Plaintiff's argument with respect to general jurisdiction is unpersuasive. The focus of the personal jurisdiction inquiry is a *defendant's* relationship to the forum state, and N.M.T. Inc. is not a defendant in this action. Bristol-Myers, 137, S. Ct. at 1779; (Document No. 1, p. 1). Thus, in this action, this Court is not concerned with whether it can exercise general jurisdiction over N.M.T. Inc., and the undersigned offers no opinion on the issue.

**2. Specific Jurisdiction**

Defendants also argue that this Court lacks specific jurisdiction over them. (Document No. 9, pp. 8-13). Following the guidance of the Fourth Circuit's three-element test for analyzing specific jurisdiction, Defendants make three assertions. (Document No. 9, pp. 9-13) (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)). First, Defendants assert that they have not purposefully availed themselves of North Carolina, because they do not "have *any* contacts with North Carolina." (Document No. 9, p. 9) (emphasis in original). Second, Defendants assert that even if they had purposefully availed themselves of North Carolina, Plaintiff's claims do not arise out of Defendants' activities directed at the state, because "Plaintiff does not even allege that Defendants engaged in any activity related to [North Carolina]." (Document No. 9, p. 10). Third, Defendants assert that even if their conduct satisfies the first two elements of the Fourth Circuit's test for specific jurisdiction, this Court's assertion of specific

jurisdiction over Defendants would not comport with fair play and substantial justice. (Document No. 9, p. 10-13) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).

Elaborating on this third assertion, Defendants contend: (1) that litigation in North Carolina would impose a heavy burden on them; (2) that California has a much greater interest in this action than does North Carolina; (3) that Plaintiff's interest in obtaining relief would be better served in California than in North Carolina; and (4) that litigation in California would allow for the most efficient resolution of this controversy. (Document No. 9, pp. 11-13); see also Burger King, 471 U.S. at 477 (identifying factors courts consider to determine whether the exercise of personal jurisdiction would comport with fair play and substantial justice).

In response, Plaintiff argues that this Court may assert specific jurisdiction over Defendants because Defendants have sufficient minimum contacts with North Carolina and because litigation in California would be as difficult for Plaintiff as litigation in North Carolina would be for Defendants. (Document No. 12, pp. 6-8). In support of Plaintiff's argument that Defendants have sufficient minimum contacts with North Carolina, Plaintiff points: (1) to communications Defendants conveyed to Plaintiff's "704 area code cell phone;" (2) to Defendants' cashing of checks that Plaintiff wrote with her North Carolina-based bank account; (3) to Defendants' alleged breach of contract with a North Carolina resident (specifically, Plaintiff); and (4) to her allegation that N.M.T. Inc. transacted business in North Carolina. (Document No. 12, p. 7).

In support of Plaintiff's argument that litigation in California would place as great a burden on her as litigation in North Carolina would place on Defendants, Plaintiff: (1) cites the costs associated with traveling to California; (2) claims that essential non-party witnesses are domiciled in North and South Carolina; (3) contends that litigating the "Trust portion of [Plaintiff's] complaint" in California may be impossible "as a result of a lapse in time to file;" (4) claims that

courts in California would exhibit an unfair bias toward her; and (5) says that safety concerns make her feel that it is not in her best interest to return to California. (Document No. 12, pp. 7-8).

For the reasons discussed below, the undersigned finds that this Court may not assert specific jurisdiction over the Defendants consistent with the Due Process Clause of the Fourteenth Amendment.

The first prong of the Fourth Circuit's three-part test requires a court to consider "the extent to which [a] defendant purposefully availed itself of the privilege of conducting activities in the [forum] State." New Wellington, 416 F.3d at 295. This prong "articulates the minimum contacts requirement of constitutional due process." Consulting Eng'rs Corp., 561 F.3d at 278. The minimum contacts requirement "ensure[s] that [a] defendant is not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." Id. at 277 (internal quotation marks omitted) (citing Burger King, 471 U.S. at 475). Minimum contacts do not exist simply because it was foreseeable that a defendant could cause injury in another state. Burger King, 471 U.S. at 474 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S 286, 295 (1980)). "Instead, the foreseeability that is critical to due process analysis is that [a] defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." Id. (internal quotation marks omitted) (quoting World-Wide Volkswagen, 444 U.S. at 297).

Entering into a contract with an out-of-state party does not automatically establish minimum sufficient contacts in that party's home forum. See Burger King, 471 U.S. at 478. Rather, a court must examine factors including place of negotiation, contemplated future consequences, and the course of dealing. See id. at 479. Based on such factors, a court then determines whether a contract demonstrates that a defendant purposefully availed itself of the forum state. See id.

Plaintiff's allegations of Defendants' contacts with North Carolina do not persuade the undersigned that Defendants purposefully availed themselves of the state. Plaintiff's strongest argument that Defendants purposefully availed themselves of North Carolina is that "Defendants were aware that … Plaintiff was a North Carolina resident at the time they commenced a contract with one another." (Document No. 12, p. 7); see also (Document No.1, pp. 8-9, 150-55). But an analysis of the relevant factors leads the undersigned to conclude that this alleged contract—even along with Defendants' other alleged contacts with North Carolina—does not establish that Defendants purposefully availed themselves of North Carolina. See Burger King, 471 U.S. at 479.

Addressing the factors in turn, the undersigned does not find that in allegedly entering into and breaching a contract with Plaintiff, Defendants purposefully availed themselves of North Carolina. See id. First, Plaintiff provides nothing to suggest that Defendants negotiated the alleged contract in North Carolina, and it appears that Defendants executed the alleged contract in Orange County, California. (Document No. 1, pp. 154-55). Next, by Plaintiff's own allegations, the alleged contract concerned a number of real properties, none of which were located in North Carolina. (Document No. 1, pp. 7-8); (Document No. 12, p. 7). Finally, Plaintiff does not allege that any of the acts or omissions that breached the contract did take place or should have taken place in North Carolina. (Document No. 1, pp. 7-8); (Document No. 12, p. 7).

Accordingly, the undersigned is not persuaded that when Defendants allegedly entered into the contract with Plaintiff, Defendants' conduct and connection with North Carolina were such that they should have "reasonably anticipated being haled into court [in North Carolina]." Burger King, 471 U.S. at 474 (quoting World-Wide Volkswagen, 444 U.S at 297). Moreover, because the undersigned finds that Defendants have not purposefully availed themselves of North Carolina, the undersigned will decline to consider whether Plaintiff's claims arise from Defendants'

activities directed at North Carolina or whether exercise of personal jurisdiction would be constitutionally reasonable.  See Consulting Eng'rs Corp., 561 F.3d at 278 ("If, and only if, we find that plaintiff has satisfied this first prong of the test for specific jurisdiction need we move onto consideration of prongs two and three.").

**B.     Venue**

Because the undersigned recommends that this case be dismissed for lack of personal jurisdiction, the undersigned will also decline to consider whether venue is proper.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' "Motion to Dismiss Pursuant to Rule 12 for Lack of Jurisdiction and for Improper Venue" (Document No. 8) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's "Motion for Expedited Consideration of Motion to Dismiss and Declaratory Judgment" (Document No. 16) be **DENIED AS MOOT**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond,

416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: July 9, 2018

David C. Keesler
United States Magistrate Judge